UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY W.,

                        Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

<u>DECISION AND ORDER</u>

19-CV-1286L

**PRELIMINARY STATEMENT**

Plaintiff Anthony W. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for supplemental security income benefits ("SSI"). (Dkt. # 1).

On March 22, 2016, plaintiff filed an application for SSI, alleging disability beginning on May 1, 1993. (Tr. 81-83).[1] On July 18, 2016, the Social Security Administration denied plaintiff's application, finding that he was not disabled. (Tr. 92-97). Plaintiff requested and was granted a hearing before an administrative law judge. (Tr. 100-108). Administrative Law Judge Stephen Cordovani (the "ALJ") conducted the hearing on August 6, 2018, at which plaintiff and vocational expert Eric Dennison (the "VE") testified. (Tr. 29-80). In a decision dated September 17, 2018, the ALJ found that plaintiff was not disabled and was not entitled to benefits. (Tr. 15-24). On

---

[1] References to page numbers in the Administrative Transcript (Dkt. # 6) utilize the internal Bates-stamped pagination assigned by the parties.

July 25, 2019, the Appeals Council denied plaintiff's request for a review of the ALJ's decision, making the Commissioner's decision final. (Tr. 1-6). Plaintiff then commenced this action on September 20, 2019. (Dkt. # 1).

Currently pending before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. ## 11, 12). For the reasons stated below, plaintiff's motion (Dkt. # 11) is denied, and the Commissioner's motion (Dkt. # 12) is granted. Plaintiff's Complaint (Dkt. # 1), therefore, is dismissed.

## DISCUSSION

**I.     Relevant Standards**

Determination of whether a claimant is disabled within the meaning of the Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *see also* 20 C.F.R. §§ 404.1520, 416.920. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

**II.    The ALJ's Decision**

Here, the ALJ applied the sequential analysis. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 22, 2016 – the application date. (Tr. 17). At step two, the ALJ determined that plaintiff had the following severe impairments: left upper arm fracture; sciatica; degenerative changes of lumbar and thoracic spine; status post remote thoracolumbar fusion; and cervical disc disease with radiculopathy. (*Id.*). The ALJ also discussed

several other physical and mental impairments that he found to be nonsevere. (Tr. 17-19). At step three, the ALJ concluded that plaintiff's impairments, alone or in combination, did not meet or medically equal a listed impairment in Appendix 1 to Subpart P of Part 404 of the relevant regulations (the "Listings"). (Tr. 20).

The ALJ determined that plaintiff retained the RFC to perform light work with the following limitations: no continuous walking for greater than one hour; occasional climbing of ramps and stairs; occasional bending, squatting, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; frequent reaching with the left, non-dominate arm with no overhead reaching with the left arm; and occasional pushing and pulling with the left arm. (Tr. 20).

At step four, the ALJ found that plaintiff had no past relevant work. (Tr. 22). Finally, at step five, the ALJ determined that based on the VE's testimony and plaintiff's age, education, work experience and RFC, plaintiff could perform other occupations existing in significant numbers in the national economy, specifically, information clerk, ticket seller, and checker 1, all of which were classified as light exertional jobs and as unskilled work with a specific vocational preparation ("SVP") level of two. (Tr. 23). Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. (Tr. 24).

### III.     Plaintiff's Contentions

Plaintiff challenges the ALJ's disability decision for two separate reasons. (Dkt. ## 11-1, 13). First, he contends that the ALJ erroneously evaluated the "medical opinions" of Dr. Cheryle R. Hart, MD ("Dr. Hart"), a physician who treated plaintiff at RES Physical Medicine & Rehab ("RES") in Buffalo, New York, and instead placed undue reliance on the "stale" opinion of consultative examiner Dr. Hongbiao Liu, MD ("Dr. Liu"). (Dkt. # 11-1 at 14-22). Plaintiff asserts

3

that Dr. Liu's June 6, 2016 consultative opinion was rendered stale by injuries plaintiff sustained during a motor vehicle accident that occurred on November 29, 2016. (*Id.* at 20-22). Second, plaintiff maintains that the ALJ's analysis of his subjective complaints was flawed because the ALJ "mischaracterized and overstated" plaintiff's activities of daily living. (*Id.* at 22-27). Neither of these arguments is persuasive.

IV.   **Analysis**

    A.   **ALJ's Evaluation of Medical Opinion Evidence**

I turn first to the ALJ's consideration of the medical opinion evidence of record. As indicated above, the ALJ considered two separate medical "opinions" in reaching his RFC determination; first, Dr. Liu's June 2016 consultative examination, which the ALJ afford "significant weight"; and second, statements co-authored by Dr. Hart from December 2016 through June 2018 that plaintiff was "100% impaired as a direct result of motor vehicle injuries sustained on [November 29, 2016]," which the ALJ gave "no or very little weight." (Tr. 22). An overview of these records illustrates that the ALJ did not err in evaluating this evidence.

Dr. Liu conducted an internal medical examination of plaintiff on June 6, 2016. (Tr. 275-81). At that time, plaintiff presented with the chief complaints of hypertension, which began in 2014, and whole-body joint pain, which was secondary to a basketball injury as well as a 2014 motor vehicle accident. (Tr. 275). Dr. Liu noted that x-rays revealed scoliosis in plaintiff's spine, that plaintiff had "bone-like spine scoliosis," and that he had back surgery previously in 1995 and 1997. (*Id.*). Plaintiff rated the pain as 8/10 and described it as constant, pressure, and sharp. (*Id.*). Plaintiff also reported that he could lift ten pounds, could walk half a block, needed to change positions after ten minutes of sitting or standing, that cold weather and exercise made his pain

worse, and that he had associated numbness and tingling in his hands and toes. (*Id.*). As far as activities of daily living, plaintiff stated that he could cook occasionally, cleaned the house once a week, did laundry every two weeks, shopped once a month, and took a shower every day. (*Id.*).

Dr. Liu's physical examination revealed that plaintiff was in no acute distress at the time of the examination, but he walked slowly, could not perform heel and toe walking because of low back pain, and could only squat 10% of normal because of low back pain. (Tr. 276). Plaintiff, however, used no assistive devices to ambulate, needed no help changing for the examination or getting on or off the examination table, and was able to rise from a chair without difficulty. (*Id.*).

In addition, plaintiff demonstrated limited range of motion throughout his cervical and low lumbar spine but had no abnormality in his thoracic spine. (Tr. 277). Plaintiff's straight leg raise test was also positive at 15 degrees bilaterally, as confirmed by supine and sitting position. (*Id.*). Plaintiff had limited range of motion in his shoulders, but had full range of motion in his elbows, forearms, and wrists, bilaterally, as well as his hips and ankles bilaterally. (*Id.*). Plaintiff's joints were stable and nontender, he had no sensory deficits or muscle atrophy throughout his extremities, and he had full strength in his upper and lower extremities, as well as full grip strength. (*Id.*).

After reviewing x-rays of plaintiff's left knee, which showed no significant bony abnormality, and of his lumbar spine, which revealed no compression fracture and status post scoliosis surgery, Dr. Liu diagnosed plaintiff with hypertension and whole-body joint pain and indicated that plaintiff's prognosis was stable. (Tr. 278-80). Dr. Liu also opined that plaintiff had "moderate limitation" for prolonged walking, bending, and kneeling, and "mild limitation" for lifting, carrying, and overhead reaching. (Tr. 278).

The ALJ gave this opinion "significant weight" because it was "consistent with the findings of [Dr. Liu's] examination of [plaintiff] as well as the overall treatment record." (Tr. 22). "Most importantly," according to the ALJ, plaintiff's "activity level support[ed] such opinion." (*Id.*).

Plaintiff contends that Dr. Liu's opinion was rendered "stale" because of his November 29, 2016 motor vehicle accident. (Dkt. # 11-1 at 20-22). According to plaintiff, the accident "caused deterioration of his condition and exacerbated his existing pain" (*id.* at 20), and the ALJ "failed to even consider Plaintiff's deteriorations as of November 29, 2016, something which was reiterated over and over in the [RES treatment notes]" (*id.* at 22).

Initially, it is incorrect for plaintiff to assert that the ALJ "failed" to consider plaintiff's "deteriorations" post-accident; in fact, the majority of the ALJ's RFC discussion focuses on records from RES, all of which occurred after plaintiff's November 2016 car accident. (Tr. 21).

Moreover, I disagree that plaintiff's November 2016 car accident rendered Dr. Liu's June 2016 opinion "stale." True, "an ALJ should not rely on 'stale' opinions – that is, opinions rendered before some significant development in the claimant's medical history," *Robinson v. Berryhill*, 2018 WL 4442267, *4 (W.D.N.Y. 2018), and "[m]edical source opinions that are stale and based on an incomplete medical record may not be substantial evidence to support an ALJ['s] finding," *Davis v. Berryhill*, 2018 WL 1250019, *3 (W.D.N.Y. 2018) (alterations, citations, and quotations omitted). But "a medical opinion is [not] stale merely because it pre-dates other evidence in the record, where . . . the subsequent evidence does not undermine [the opinion evidence]." *Hernandez v. Colvin*, 2017 WL 2224197, *9 (W.D.N.Y. 2017). *Accord Pritchett v. Berryhill*, 2018 WL 3045096, *8 (W.D.N.Y. 2018) (noting that "[i]f a claimant's status regarding her impairments undergoes 'significant deterioration' after a consultative examination, the examination may not constitute substantial evidence," but that a "medical opinion based on only part of the

6

administrative record may still be given weight if the medical evidence falling chronologically before and after the opinion demonstrates 'substantially similar limitations and findings'") (citations omitted).

As the ALJ recognized, several months after Dr. Liu's examination plaintiff presented to the Erie County Medical Center ("ECMC") emergency department on November 29, 2016 following his accident. (Tr. 21 (citing Tr. 729-31)). At that time, plaintiff "only" complained of low back pain, had no headache, and reported that he did not hurt his neck during the accident. (Tr. 729). He told providers that he was born with scoliosis and had two prior back surgeries, which resulted in "chronic back pain," but that his pain post-accident was "worse" than normal, rating it 7/10. (*Id.*). The pain was "in his low back on the left side and it radiate[d] into his left buttocks and left hamstring." (*Id.*). Still, providers noted that plaintiff could ambulate "without difficulty" in the emergency department. (Tr. 729, 731).

Notably, plaintiff's physical examination at ECMC was "unremarkable." (Tr. 731). Aside from his low back pain, plaintiff reported no other symptoms; he denied joint pain, muscle ache, and neck pain. (Tr. 730). He exhibited no vertebral tenderness, had full strength in all extremities, normal gait, no sensory deficits, and negative straight leg raise test results. (Tr. 730-31). X-rays of his lumbar spine revealed no acute fracture or subluxation, and there was no malfunction of the instrumentations placed in his back during prior surgeries. (Tr. 730-31).

Providers at ECMC diagnosed plaintiff with a "muscle sprain of the left low lumbar spine," discharged him on November 29, 2016 (the same day as the accident), and prescribed him pain medication that he could take at home and told him to use ice and heat "as needed for comfort." (Tr. 731). Overall, his condition was "[g]ood." (*Id.*). In addition, providers did not see the need

to limit plaintiff's activities; they indicated that he could return to work on December 1, 2016 – only two days after the accident – with no listed limitations. (Tr. 732).

Following his November 2016 car accident, as the ALJ also pointed out, plaintiff began treatment at RES in December 2016. (Tr. 666). At his first appointment on December 9, 2016, plaintiff presented to Dr. Hart and Ross Guarino, RPA-C, with "pain in the neck[,] mid and lower back [that was] radiating into the left buttock and left arm." (*Id.*). He rated his pain as 6/10 (less severe than at the time of Dr. Liu's evaluation), and indicated that while he did have a history of pre-existing back pain secondary to scoliosis, his symptoms "ha[d] increased in severity since the motor vehicle accident." (*Id.*). These increased symptoms were "constant and exacerbated with any activity," including "lifting and bending[,] walking and prolonged sitting." (*Id.*). He also reported that he was having difficulty with household tasks such as vacuuming, cleaning, and shopping, and that his sleep was interrupted. (*Id.*). In addition, despite indicating that his pain medication was giving him "little benefit," plaintiff also reported that his medications decreased his pain by at least 50% "thereby allowing improved daily functioning." (*Id.*).

On physical examination, providers noted that plaintiff was using an assistive device to ambulate and had slow antalgic gait. (Tr. 667). Plaintiff demonstrated limited range of motion in his cervical and lumbar spine, as well as tenderness, trigger points, hypertonicity, and spasms in his thoracic spine, and decreased motor strength in his left upper and lower extremities. (Tr. 668). Plaintiff could only perform tandem walking and heel to toe walking with pain. (*Id.*).

Dr. Hart diagnosed plaintiff with radiculopathy in the cervical and lumbar regions, as well as sprained ligaments in the cervical, thoracic, and lumbar spine. (*Id.*). Plaintiff was prescribed pain medication and advised to seek a consultation with a chiropractor. (Tr. 669-70). Yet even with these new diagnoses, Dr. Hart did not detail any associated functional limitations. Instead,

Dr. Hart opined, without explanation, that plaintiff was "unable to work" and that he "has been and remains 100% impaired as a direct result of motor vehicle injuries sustained on [November 29, 2016] due to the above-stated impressions." (Tr. 670).

The record contains twelve more treatment notes from plaintiff's appointments as RES, spanning from January 2017 through June 2018, which the ALJ discussed. (*See generally* Tr. 21, 646-710). Each treatment note is signed by Dr. Hart and either Ross Guarino, RPA-C, Karen Pellicore, FNP-C, or Allison Cuzzocrea, PA-C, and contains generally consistent assessments of plaintiff's condition as reported in the above-detailed December 9, 2016 note.

Specifically, throughout this time, plaintiff continued to present to RES with neck and back pain that radiated through the left side of his body, and at times reported shooting pain throughout his upper extremities bilaterally. He also reported the same limitations; that his pain increased with lifting, bending, walking, and prolonged sitting, that he had difficulty with household tasks like vacuuming, cleaning, and shopping, and that his sleep was interrupted. Physical examinations of plaintiff also remained generally consistent; plaintiff demonstrated limited range of motion in his cervical and lumbar spines, with tenderness and spasms in his thoracic spine, his motor strength was decreased in his left extremities, and he had difficulty walking.

Moreover, plaintiff's diagnosed impairments from his December 2016 appointment remained consistent throughout his treatment at RES, with the addition of sciatica beginning in August 2017. Still, providers at RES prescribed plaintiff the same treatment – pain medications, which reportedly improved his daily functioning and decreased his pain, and chiropractic therapy. No referral to a specialist was needed. Furthermore, and significantly, none of these subsequent notes contained a functional assessment of plaintiff's physical capabilities; as with the December 2016 treatment note, each note stated, without any detailed explanation, that plaintiff was "unable

9

to work" and that he "has been and remains 100% impaired" because of the November 2016 accident. (Tr. 650, 655, 659, 664-65, 674, 680, 685, 689-90, 695, 700, 705, 710).

In addition, at plaintiff's last appointment with RES on June 4, 2018, he indicated that he had not been seen since January 2018. (Tr. 646). He reported that his pain was a 9/10, but that he had not been taking any pain medication and had stopped receiving chiropractic therapy. (*Id.*). This suggests, as the ALJ indicated, that plaintiff's "treatment has been successful in reducing his symptoms." (Tr. 22). Plaintiff also reported full range of motion in his shoulders and intact motor strength in his upper and lower extremities, which was an improvement from his prior appointments. (Tr. 647-48). Plaintiff's providers indicated that he should restart his chiropractic care and that he could engage in activities "as tolerated." (Tr. 649). Still, they continued to state, without explanation, that plaintiff was "unable to work" and that he "has been and remains 100% impaired." (Tr. 650).

As for whether these treatment notes render Dr. Liu's opinion "stale," as plaintiff suggests, I acknowledge that providers at RES diagnosed plaintiff with more than "whole body joint pain," as Dr. Liu did, and that the results of plaintiff's physical examinations throughout his treatment at RES are not identical to the results noted by Dr. Liu in June 2016. Yet in my view, plaintiff's physical condition did not "significant[ly] deteriorate[e]" after the November 2016 car accident, such that the medical evidence post-accident "undermine[d]" Dr. Liu's opinion. *See Pritchett*, 2018 WL 3045096 at *8; *Hernandez*, 2017 WL 2224197 at *9.

Rather, it is evident that plaintiff's physical examinations were largely similar pre- and post-accident. As Dr. Liu detailed, plaintiff exhibited limited range of motion throughout his spine, had numbness in his hands and toes, had difficulty walking, and had rather severe back pain, just as he did throughout his treatment at RES. In addition, plaintiff's self-reported functional

limitations post-accident – difficulty lifting, bending, walking, and sitting – were very similar to those Dr. Liu identified, and which were ultimately adopted by the ALJ.  Indeed, the ALJ limited plaintiff, among other things, to "no continuous walking greater than one hour," occasional bending, squatting, crouching, and crawling, no overhead reaching with the left arm, and only occasional pushing and pulling with the left arm.  (Tr. 20).

In short, plaintiff has not directed the Court's attention to anything specific from the RES treatment notes, nor has the Court uncovered anything, that demonstrates his condition *significantly* deteriorated after the November 2016 car accident sufficient to undermine Dr. Liu's opined functional limitations.  Dr. Liu's opinion was thus not "stale," as his evaluation and opinion of plaintiff were substantially similar to plaintiff's condition post-accident.  The ALJ therefore acted within his discretion in affording Dr. Liu's opinion "significant weight," and I find that substantial evidence supports the ALJ's decision to do so.

Nor was the ALJ required, as plaintiff contends, to afford any special weight to Dr. Hart's "opinion" that plaintiff was consistently "unable to work" and "100% impaired" from December 2016 through June 2018.  (Dkt. # 11-1 at 17-20).  On this point, the Commissioner is correct that such conclusory statements do not qualify as "medical opinions," as defined by the regulations.

The regulations define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).  Specifically, statements from a medical source on "issues reserved to the Commissioner," such as that a claimant is "disabled" or "unable to work," do not qualify as "medical opinions," and are "not give[n] any special significance."  *Id.* at § 416.927(d)(1), (3); *see also Hart v. Comm'r of Soc.*

*Sec.*, 2020 WL 2525769, *6 (W.D.N.Y. 2020) ("the ultimate finding of whether [p]laintiff was disabled and cannot work is 'reserved to the Commissioner' and a physician's statement that the claimant is disabled is not determinative"); *Farnsworth v. Berryhill*, 2018 WL 6313468, *4 (W.D.N.Y.) ("Conclusory statements concerning disability made by treating physicians do not constitute a 'medical opinion.'") (citations omitted), *report and recommendation adopted by*, 2018 WL 5617720 (W.D.N.Y. 2018).

Contrary to plaintiff's contention, then, the ALJ did not err in discounting Dr. Hart's statements that plaintiff was unable to work and totally disabled. These were statements on issues explicitly reserved to the Commissioner. Moreover, as indicated above and as correctly noted by the ALJ, the treatment notes from RES, which the ALJ detailed in his decision, did not otherwise include "definite functional limitations" regarding plaintiff's capabilities. (Tr. 22). The ALJ thus acted within his discretion in affording these statements "no or very little weight." (*Id.*).

For all these reasons, I find that the ALJ did not erroneously consider the medical opinion evidence, and that the ALJ's RFC determination, which is largely based on Dr. Liu's medical opinion, is supported by substantial evidence. Remand is thus not warranted on this basis.

### B. ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff next contends that the ALJ erred in evaluating his subjective complaints by "mischaracterize[ing] and overstat[ing]" his activities of daily living. (Dkt. # 11-1 at 22-27). This contention lacks merit.

In assessing a claimant's subjective complaints, an ALJ must consider the objective medical evidence, as well as evidence concerning: (1) the plaintiff's daily activities; (2) the location, duration, frequency and intensity of the plaintiff's pain or other symptoms; (3) factors that precipitate or aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of

plaintiff's medications; (5) other means of pain relief received by the plaintiff; (6) non-treatment measures used by plaintiff for pain relief; and (7) any other factors concerning the individual's functional limitations and restrictions. *See* 20 C.F.R. § 416.929. "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the [c]ourt to decide whether there are legitimate reasons for the ALJ's disbelief." *Cornell v. Astrue*, 2013 WL 286279, *7 (N.D.N.Y. 2013) (citation omitted). Moreover, "[w]here supported by substantial evidence, an ALJ's evaluation of a claimant's credibility is entitled to 'great deference.'" *Lori M. v. Comm'r of Soc. Sec.*, 2020 WL 7382128, *6 (W.D.N.Y. 2020) (citation omitted).

Here, the ALJ found that while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21).

In reaching this determination, the ALJ considered several factors. To be sure, the ALJ placed emphasis on plaintiff's reported activities of daily living. (Tr. 21-22). He noted, for example, that plaintiff testified he took out the garbage (Tr. 73), could walk to the corner store (Tr. 43), went on a weekend getaway with his significant other to a casino (Tr. 66-67), could sit and stand for up to an hour before needing to change position (Tr. 43), and committed to painting job where he was supposed to paint a portion of a house (Tr. 69-70). While the ALJ did not mention some difficulties plaintiff experienced performing these activities – such as that the garbage plaintiff took out was in a small bag, that he needed to rest after walking to the corner store, or that plaintiff ultimately did not paint the house – it is clear that the ALJ took account of other factors in evaluating plaintiff's subjective complaints.

Specifically, the ALJ considered the fact that plaintiff's treatment for his alleged impairments has been "essentially routine and conservative in nature," and that "[m]ore importantly, this treatment has been successful in reducing [plaintiff's] symptoms." (Tr. 21-22). The ALJ also noted plaintiff's sparse work history prior to the alleged disability onset date, which, in the ALJ's view, "raises a question as to whether [plaintiff's] continuing unemployment [was] actually due to medical impairments." (Tr. 22). And the ALJ placed some weight on the fact that plaintiff "betrayed no evidence of debilitating symptoms while testifying at the [administrative] hearing," noting that although not a "conclusive factor" on plaintiff's "overall level of functioning on a day-to-day basis," it was still due "some slight weight." (Tr. 22).

When viewed together, then, I find nothing unreasonable about the ALJ's evaluation of plaintiff's subjective complaints, and that his decision to discount these complaints was supported by substantial evidence and is owed "great deference." Remand is thus not warranted on this basis.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence and was not based on legal error. Plaintiff's motion for judgment on the pleadings (Dkt. # 11) is **DENIED**, the Commissioner's motion for judgment on the pleadings (Dkt. # 12) is **GRANTED**, and the Commissioner's decision that plaintiff is not disabled is affirmed in its

entirety.  Plaintiff's Complaint (Dkt. # 1) is **DISMISSED with prejudice**.  The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 20, 2021.